## GENERAL COURT, MAY TERM, 1802.

### DAVIS *et al.* Lessee, *vs.* BATTY.

EJECTMENT for a tract of land called *Brown's Discovery*, lying in Anne-Arundel county. Defence on warrant, and plots returned.

1. The plaintiff at the trial produced and read in evidence to the jury, a certificate of survey and grant of the tract of land called *Brown's Discovery*, the former dated the 19th of July 1762, and the latter dated the 9th of June 1764, founded upon a special warrant granted to *William Brown* for 50 acres of vacant land; and proved that the said land is located on the plots in this cause, beginning at the figure 1. He also read in evidence a deed of bargain and sale, dated the 19th of May 1769, from *Samuel Chase*, and *William Brown*, the patentee, to *Robert Davis*, for the said land, and offered evidence that *Robert Davis* died intestate, leaving *Robert Payne Davis* his heir at law,

*The commissioners appointed under the land law of 1715, ch. 45, acted judicially, and their judgment is conclusive between the parties, unless reversed on an appeal; and as between strangers the proceedings are evidence in the same manner that hearsay is admissible to prove the bounds of land.*

*The deposition of a witness taken under a land commission legally executed, cannot be read in evidence unless there is proof of the death of the witness.*

*Where a grant describes the tract of land as lying on the W. side of Chesapeake bay, and on the W. side of S. river of that bay,* beginning at a *marked oak standing near a marsh of the said river, called Selby's Marsh,* bounding on the E. with a line drawn N. W. and by N. from the said oak, &c. (sundry courses having calls) unto the land of J W. and *then with the said land,* containing, &c. *Held* by the *court of appeals* to be ambiguous, and therefore left to the determination of the jury—thereby dissenting from the decision made by the general court in this case.

The allowance for the attendance of a witness, who was *subpœnaed,* but not sworn at the trial, is not to be taxed in the costs, unless directed by the court, on application,

who became seised of the said land; and that *R. P. Davis* also died intestate in the year 1793, leaving the lessors of the plaintiff his heirs at law; and that since the commencement of the present action, *Frances* and *James*, two of the said lessors of the plaintiff, have died. He also offered in evidence a certificate of survey of a tract of land called *Selby's Marsh*, dated the 25th of September 1652, hereafter set forth.

The defendant on his part offered in evidence the certificate and grant of *Selby's Marsh*, the first dated the 25th of September 1652, and the last the 26th of April 1658; also the original record of the proceedings of certain commissioners on the petition of *Joshua Mayo* and *Charles Stewart*, dated the 7th of June 1717, lodged in the office of the clerk of Anne-Arundel county court, and by him brought into court, and which is as follows: "*Joshua Mayo* and *Charles Stewart's* petition. To the gentlemen commissioners of Anne-Arundel county appointed for the ascertaining the bounds of land, and deciding the differences between parties thereon, &c. The humble petition of *Joshua Mayo* and *Charles Stewart* humbly sheweth, that your petitioners are seised, in fee simple, of a tract of land lying on the S. side of S. river, originally granted to *Edmund Towning* of the county aforesaid, in the bounds of which your petitioners conceive some irregularities, and is molested by a certain *Hezekiah Linsicum* from occupying, (as they conceive,) their own land; wherefore your petitioners humbly pray you'l appoint a certain time whereon to meet on the premises, in order to ascertain the bounds thereof, and decide the difference now depending; and your petitioners in duty bound shall ever pray, &c. March 13, 1716, this petition granted.

"June 7, 1717. At a meeting held of the commissioners appointed for ascertaining the bounds of land, on the petition of *Joshua Mayo* and *Charles Stewart*, complainants, against *Hezekiah Linsicum*, defendant. Commissioners present, *Thomas Larkin*," &c. "Gentlemen, and they proceeded on the premises of the above petition. *William Brewer*, aged about fifty-

three years, being sworn, deposeth as follows:  That his brother, *John Brewer*, and *Nathaniel Hethcoat*, told *him*, that the tree we are now at, being a gum, was a bounded tree of *Edward Sarson*, and that to his knowledge it hath been deemed a bounded tree of *Edward Sarson* this forty years," &c. &c. [*Here follow other depositions.*] "June 7, 1717. Pursuant to the directions of the commissioners appointed for ascertaining the ancient metes and bounds of land in Anne-Arundel county, upon the petition of *Joshua Mayo* and *Charles Stewart*, complainants, against *Hezekiah Linsicum*, defendant, upon the bounds of a tract of land formerly laid out for *Edward Towning* of the said county, lying in S. river, now in the tenure of the said *Joshua* and *Charles*, I, *Thomas Stockett*, junior, surveyor appointed by the said commissioners, began at a bounded gum tree standing at the head of a branch, which was proved by the evidence of *William Brewer* and *Thomas Harris*, to be the original bounded gum mentioned in the original certificate of survey of the said land on the W. thence S. 57¾° Easterly 67 perches, to the line of *Selby's Marsh*, and bounding on the S. with the said land by a line drawn SE. and by S. 150 perches, to the spot where the original bounded tree of *Selby's Marsh* was adjudged to stand by the said commissioners, which included the land in dispute, and was ascertained for the ancient metes and bounds of the said complainants' lands.

Per me     *T. Stockett*, Jr."

[Here follows the plot.]

"*Mayo* and *Stewart*, compl. *vs. Linsicum*, defendant. The whole cost is 1258lbs. tobacco. Judgment for the complainant for 12lbs. tobacco damages, done the land in dispute, and 629lbs. tobacco, part of the cost of suit for their vexation, the other 629lbs. tobacco, part of the cost abovesaid, we find reasonable to be paid by the complainants, the resurvey upon the premises being in other respects of great service to the complainants; and further, that the complainants shall hold the land from *Pyther's* Creek, at the end of the WSW. course, by the following courses: S. 57¾ E.

67 perches, to the line of *Selby's Marsh*, thence SE. and by S. 150 perches, with the said land, to the spot where the beginning tree of *Selby's Marsh* was adjudged to stand, at which place was set a cedar post by order of the commissioners, thence bounding on the water to the beginning, as per the plot thereof doth appear,

Signed per order of the commissioners,

*F. Warman*, Clk."

The defendant also produced and read to the court, an act of assembly passed at *April session* 1715, ch. 45, entitled, "An act for ascertaining the bounds of lands within this province" *(a)*.

To the reading of which proceedings and plot to the jury, the plaintiff by his counsel objected,

*Ridgely*, *Shaaff* and *Johnson*, for the plaintiff.

*Martin*, (Attorney General,) and *Key*, for the defendant.

Chase, Ch. J.*(b)*. The court are of opinion, that the commissioners under the act of 1715, ch. 45, acted judicially; and as between the parties, their judgment and the plot would be conclusive, unless reversed on an appeal made in the manner and within the time prescribed by that act; and as between other persons, the proceedings are admissible as evidence on the same ground that hearsay is admissible to prove the bounds of land.

The court are therefore of opinion, that the record of the proceedings and plot are legal and proper evidence in this cause, and admit the same to be read to the jury. The plaintiff excepted.

2. The plaintiff offered in evidence the certificate and patent of the tract of land called *Brown's Discovery*, as before mentioned, and the plots and explanations returned in this cause, to prove his title to the

*(a)* See the act at large, 2 Harr. & M'Hen. Appendix XIII.

*(b)* *Duvall* and *Done*, J. concurring.

Certain expressions in a grant as to the running of the land, considered by the court ambiguous, and of appeals to be therefore left to jury to decide—thereby disagreeing with the general court in the decision here made,

MAY 1802

Davis
vs
Batty

said land, which it is admitted is truly located on the plots.

The defendant offered evidence that he had truly located on the said plots *Meade's* creek, *South* river, *Selby's* bay, and *Copling's* creek. He also offered in evidence the cer'ificate and grant of the tract of land called *Selby's Marsh*, before mentioned, which describes said land as "lying *on the W. side of Chesapeake bay, and on the W. side of South river of that bay*, beginning at a *marked oak standing near a marsh of the said river, called Selby Marsh*, bounding on the E. with a line drawn NW. and by N. from the said oak, for the length of 150 perches, on the N. with a line drawn W. from the end of the former line for the length of 170 perches, to a marked pockicory tree, on the W. with a line drawn S. and by W. from the said pockicory for the length of 150 perches to a marked oak, on the S. with a line drawn ESE. from the said oak for the length of 170 perches unto the land of *John Watkins* and *Jeremy Hazeling*, and *then with the said land*, containing and now laid out for 490 acres more or less." The defendant also offered evidence to prove, that the beginning of the tract of land called *Selby's Marsh*, (at figures 34 on the plots returned in this cause,) was placed on and by the side of the same waters, viz. *Meade's* creek, *South* river, *Selby's* bay and *Copling's* creek, which the fifth line of *Selby's Marsh* struck at the point 37 (being at the end of a line from the termination of the fourth course expressed in the grant,) according to the defendant's location on the plots.

The plaintiff then prayed the opinion of the court, and their direction to the jury, that the defendant's location on the plots in this cause of *Selby's Marsh*, was not according to the certificate and grant of the said land; and that if the jury were of opinion from the evidence, that the plaintiff had made title to the land called *Brown's Discovery*, he was entitled to recover in this action.

*Position of the Lands, &c.*

(a) The beginning of the fourth line of Hazeling's land.
(b) The fourth boundary of Hazeling's land, and the edge of Meade's creek,
(c) The end of the second line of Hazeling's land.

CHASE, Ch. J. *(a)*. The court are of opinion, that the grant of *Selby's Marsh* is truly located on the plots in this cause by the defendant, if the jury find *Meade's* creek, *South* river, *Selby's* bay, and *Copling's* creek, are truly located on the said plots, and the beginning of the said tract of land called *Selby's Marsh* is placed on and by the side of the same waters which the fifth line of *Selby's Marsh* strikes at the point designated by figures 37, according to the defendant's location. That all the land lying on the west side of Chesapeake bay, and on the west side of the South river of that bay, is included within the lines and bounds of the grant of *Selby's Marsh.*

DUVALL, J. dissented. He observed, that the expressions in the certificate and grant of *Selby's Marsh,* "unto the land of *John Watkins* and *Jeremy Hazeling,*" terminated the course, and the home line then

(a) *Done, J.* concurring.

commenced; that the after expressions, *"then with the said land,"* had no operation.

The plaintiff excepted to the opinion of the court. Verdict and judgment for the defendant. The plaintiff appealed to the court of appeals *(a)*.

*Shaaff,* for the Appellant, *(on the first bill of exceptions.)* The act of 1715, *ch.* 45, (since repealed,) authorised the appointing commissioners for the purpose of ascertaining the bounds of lands, and certain proceedings under that act, which had been placed on record, were read in evidence at the trial in the court below, although objected to by the plaintiff. It was not the original, but a copy put upon, and read from the record, which was permitted to be given in evidence. These proceedings do not show that the requisite notice required by the act had been given. The act directed, that on application to the commissioners they were to give notice to the party against whom the complaint is made, and issue *subpœnas* for witnesses, &c. The commissioners were to decide on and fix the bounds of the land according to the proof and circumstances, and cause plots and certificates to be made, one of which to be entered in a book to be provided for that purpose, which book was to be lodged with the clerk of the county. There was no appeal or review allowed from the decision of the commissioners except in the manner expressed in the act, which was, that any person aggrieved might have a commission of review, and from such review might appeal to the king in council if his pretensions amounted to £300 sterling. It does not appear that the party against whom the adjudication was made had notice; nor were the lessors of the plaintiff in this cause a party in that adjudication, nor do they claim

The allowance for the attendance of a witness who was summoned, but not sworn at the trial, is not to be taxed in the costs, unless directed, on application, by the court

*(a)* In this case witnesses had been *subpœnæd* by the defendant, who were not sworn at the trial. BY THE COURT—It will be a good general rule not to tax in the costs the allowance made to a witness for his attendance, who was not sworn on the trial. The court will, on affidavit, decide whether a witness not sworn at the trial was necessary to be *subpœnæa;* and if it appears to them that it was necessary, they will then order the allowance made for the attendance of such witness to be taxed in the costs of suit.

under either of the parties thereto. The proceedings therefore ought not to have been read in evidence against the plaintiff in the court below. Independent of these objections, the act does not authorise the recording the depositions of the witnesses; and the evidence taken by the commissioners is not a matter necessary to be put on record; nor is there any authority given to them to reduce into writing the depositions of the witnesses. By subsequent laws, appointing commissioners for similar purposes, authority is delegated to them to reduce into writing what the witnesses may declare. It was judged necessary to give that power by the act of 1723, *ch.* 8, which was to perpetuate testimony, whereas the act of 1715, *ch.* 45, was to settle disputes concerning the bounds of lands, and the adjudications of the commissioners, and the plots and certificates of the lands, were to be entered on record. As the act did not authorise the reducing the evidence into writing, or its being recorded, and as the commissioners have done that which they were not authorised to do, their whole proceedings are void. An act delegating a special authority should be strictly pursued, and this court will give it a rigid construction. *Weems vs. Disney,* *(4 Harr. & M'Hen. 156.)*

But taking it for granted that the commissioners did give the notice required, and had authority under the act to reduce the evidence into writing, and cause it to be entered on record; yet, if such evidence was improper to go to the jury, the court below erred, and their judgment must be reversed. It will be perceived that the evidence in one of the depositions is, that the deponent *had been told* by *Brewer* and *Hethcoat,* that a certain tree was a bounder of the land, and it does not appear on the deposition that at the time it was taken, either *Brewer* or *Hethcoat* was dead; nor was there any evidence given at the trial that the person was dead whose deposition was read in evidence. There being no such proof, the deposition was not proper testimony to go to the jury. If the language of a deposition does not make it legal evi-

May 1802

Davis
vs.
Batty

dence, it certainly cannot be admitted. The deposition itself must carry with it its own marks of being good evidence. On the face of one of the depositions the evidence is not legal and proper, being hearsay evidence from a living person, from any thing that appears to the contrary. The death only of the person, whose words are related, makes the evidence legal. It must therefore appear upon the face of the deposition, that the person is dead who gave the information to the deponent: and it must also be proved, that the person whose deposition is offered in evidence is dead, or it cannot be admitted.

As to the *second bill of exceptions.* The plaintiff claims *Brown's Discovery,* for which the ejectment was brought, and the defendant took defence for *Selby's Marsh.* The location of *Brown's Discovery* on the plots is not controverted, and the plaintiff has made title to it. He must recover unless there is some elder tract which includes the land. *Selby's Marsh* is an elder tract, but the location of it is not warranted by the grant. It was surveyed the 25th of September 1652, and *Hazeling's* land was surveyed the 20th of October 1652. The location of this last tract on the plots is admitted. In the location of *Selby's Marsh* on the plots by the defendant, the beginning is at 34 and runs to 35, 20, 21 to 36, where it intersects the land of *Watkins* and *Hazeling.* The line from 21 running ESE. 170 perches to *Watkins* and *Hazeling's* land at 36, is elongated 428 perches, being 258 perches more than the course called to run. The line can only be elongated to reach the land called for, and then with that land, which goes to figures 37 on the plots. There is no legal location of *Selby's Marsh.* The location on the plots must correspond with the expressions in the grant; and there are no courses and distances expressed in the grant which will carry it from figures 37. There is no imperative call to carry it from 37 to 34; for the expressions *"with the said land,"* will never take the line to the beginning at figures 34, as the land called for lies in another direction. The court below decided that

*Selby's Marsh* was truly located by the defendant, if the jury believed that the beginning of that tract was as the defendant had located it.

Two questions occur—1st. Can the grant be located? And 2d—Is the location made by the defendant the true one?

The tract of land called *Selby's Marsh* has no connecting home line, and therefore nothing passed by the grant. If it has a connecting line, it must be a straight line to the beginning, and cannot be run with the meanders of the river, when it is not expressed in the grant that it shall so run. Every grant is to prevail according to the words of it, and the court cannot go out of it unless there is uncertainty. The description may be so loose as to pass nothing. This grant may possibly be located in some way, but not in that which has been made of it. A grant shall be void, if it be totally uncertain. 3 *Com. Dig.* tit. *Grant*, (E. 14,) 445. But generally the King's grant will be void for uncertainty. *Ib.* (G. 6,) 449. If a grant be incertain altogether, and have not sufficient certainty in it, and cannot be made certain by some matter *ex post facto*, it is void. *Shep. Touch.* 250. The principle is, that if a grant is uncertain on the face of it, and cannot be made certain, it is void. If there is nothing on the face of it by which it may be rendered certain by matter *ex post facto*, it is void. The lines of *Selby's Marsh* can never get to the beginning by running with the land of *Watkins* and *Hazeling;* and it cannot meander with the river or *Selby's* bay to the beginning, there being no given line. The expressions in the grant are doubtful, and therefore it should have been left to the jury to determine the location. This court has said, in the case of *Dorsey vs. Hammond,* (*Ante* 190,) that similar expressions used in a grant was a matter of fact for the consideration of the jury; and the present cannot be distinguished from that case, as it regards the construction of the grant of the land called *Dryer's Inheritance;* for there the course left the river, and then came round again to the river, bounding thereon, and thence by a straight

line to the beginning, without saying *bounding on the river.* The court below determined that the course should not run with river, but should run with a straight line to the beginning. This court overruled that decision, saying it was a matter for the jury to determine whether the course should run with the river, or with a straight line to the beginning. So in this case the court ought not to have decided that *Selby's Marsh* bounded on the river. This is a more doubtful case than that of *Dorsey vs. Hammond;* for the court below were not unanimous in the construction given to the grant. Mr. *Duvall,* one of the judges, was of opinion that the land did not bind on the river, but that it should be run with a straight line to the beginning. Why say the river shall bind when the grant does not say it shall? What is there in this grant to prevent the land running with the home connecting line? A location must be made to find where the river is; and to find the river you must go out of the grant. The case of *Helms vs. Howard,* (2 *Harr. & M'Hen.* 57, 83,) depended upon the construction of the grant of *Cole's Harbour,* which is said to run "*W. to the mouth of a small gut, and over the said gut, and bounding on the NW. branch, for the length of* 320 *perches,*" &c. and the court there said, it was a matter of fact for the jury to say whether the line should run with the NW. branch, or run course and distance. In this case the plaintiff below prayed the court to direct the jury, that the defendant had not properly located *Selby's Marsh;* but the court rejected the prayer and went further, and decided that the defendant had located the land right, when they ought to have left it to the jury to determine what was the true location. By this opinion of the court below, the plaintiff was precluded from giving the most positive evidence of a different location.

*Ridgely,* on the same side. The question between the parties was a question of location, and not a question of law; and even if the general court were of opinion that the defendant's location was right, it was proper for the jury to decide that fact, and the direc-

tion of the court was wrong. If the jury had found the true location of the beginning and of the river, there was still a doubt about the location. The expression "*and with the said land*," left it doubtful how the land should be located; but the court said the land was truly located if all the circumadjacent lands, &c. were truly located.

*Martin,* (Attorney General,) and *Key,* for the Appellee. *First bill of exceptions.*—Under the act of 1715, *ch.* 45, the commissioners were constituted a court to act in a summary way. It was a court of competent jurisdiction, empowered to give judgment, put the party in possession, and give costs, from whose decision there was no appeal, except in a certain method, and the judgment of the commissioners could be reversed only in the manner prescribed by the act. The record of their proceedings is evidence, and this court has no power to inquire into the regularity of the proceedings of the commissioners who acted as a court. It is not necessary to shew that a *subpœna* issued; it must be taken for granted that the party against whom the complaint was made had notice. The commissioners under the act of 1786, *ch.* 33, for marking and bounding lands, have only a special authority, and do not act judicially, so that the decision in the case of *Weems vs. Disney* does not affect the present case. The act of 1715, *ch.* 45, directs that the plot shall be recorded. It was to be made by the surveyor under the directions of the commissioners, and being approved by them, the act directed it to be recorded. The testimony was taken by the commissioners, and of course it ought to be recorded. A cotemporary exposition is the best evidence of what the act required to be done. It was a beneficial law for settling disputes relative to the bounds of land. The party was enabled to hold according to the decree of the commissioners. The testimony must be recorded, for the evidence was to be considered on the review of other commissioners to be appointed, or on appeal to the King in council, di-

rected by the act, in case either party was aggrieved by the determination of the commissioners. And how delusive to give an appeal, unless the evidence was to go up on the appeal to the King in council? The commissioners were constituted a court of record for a special purpose. Having considered the proof and allegations of the parties, and the circumstances in the case, they were to award, &c. There were three plots to be made, one for each party, and the third to be recorded; and the judgment of the commissioners of the bounds ascertained by them of the land in dispute, to be and remain the certain and undoubted bounds of the land for ever. And the commissioners might put the plaintiff or defendant into possession, and might assess damages and costs. The record is conclusive, and from such decree there can be no review or appeal, except in the manner expressed in the act. On the first decision made by the commissioners, there was no appeal to any court of justice; there was first to be a review by other commissioners, after which there might be an appeal to the King in council.

The defendant produced to the court below the original depositions. It was then of no consequence whether they had been taken by a competent authority or not. The commissioners had a right to examine witnesses, and the original depositions taken by them may be read in evidence. It was the original depositions, being the original record in which the depositions were written, as taken down by the commissioners, which the defendant offered in evidence in the court below. Although it does not appear that *Brewer* and *Hethcoat* were dead, it did not appear that they were living; and it may be as strongly presumed that they were dead at the time the deposition of the witness was taken, as that they were living. But if they were then living, it was good testimony if they were dead when the deposition was offered in evidence, because it was the best evidence which could be found. If *Brewer*, the deponent, had been alive, he would have been examined at the trial; and the presumption

is that he was then dead. The deposition was taken in 1717, and the trial in 1802. He was an old man when the deposition was taken, and if alive at the trial he would have been at least 140 years of age. A person being alive does not weaken the weight of the testimony derived from another, or make it less true than it would be were he dead at the time when the testimony is offered in evidence.

*Second bill of exceptions.* It is contended by the counsel for the appellant, that the grant of *Selby's Marsh* is *nil operatur*, because there is no given line. The *expressio* of that which the law implies is always included. The court will be *astuti* to give it effect. The subject matter is to be considered, and the certainty requisite in deeds is to a common intent. Extraneous matter may be resorted to, to give a deed operation. Suppose a tract of land is said to begin at the mouth of a creek, and run to the opposite point, and with the creek to the beginning—Here is no certainty on the face of the grant, and you must go out of it to identify the land. If a grant can be made certain by matter *ex post facto*, testimony may be resorted to for that purpose. The counsel for the appellant admits there may be some location made of the land; but he has not pointed out how it is to be made. The survey cannot be closed without going round to the water. The meaning of the grant is to run with the land of *Watkins* and *Hazeling* to the water, and then with the water to the beginning, and the land has always been so held. Unless that construction is given, no land will pass. It is not contended but that the expressions in the grant may be doubtful; yet the power of the court is twofold as to evidence. They may direct what is proper evidence to go to the jury, and may, when the evidence is given, determine whether it is sufficient for the jury to find upon. The only question in this case is, whether upon the evidence offered, the jury ought to have found the location in the manner they did? If the court have directed them to find the location as they ought to find it, then the opinion is to stand. If there is a

possibility of closing a survey so as to make the grant effectual; the court will so direct it to close, rather than the grant should be ineffectual, and they will make such construction of the grant as will make it effectual. This grant must conclude in one of two ways, either by running with a straight line to the beginning, or with the river to the beginning. When the course comes to the land of *Watkins* and *Hazeling* it is ambiguous how far it is to run with the said land; that ambiguity is removed immediately the location is reduced to paper; and then the court will direct the jury in what manner the land is to be located. If a tract of land begins at the side of a water, and then runs off from the water certain courses, and then comes down again to the water, the water will of course be the bounder and barrier of the land. The land for which the ejectment was brought in this case was taken up 110 years after *Selby's Marsh* was taken up, and the last mentioned tract has always been held as the defendant has located it. The grant states that the land is lying on the west side of South river. The beginning is at a tree on the side of South river, and the land runs from the river round until it again meets the river. The river surely then must be the home line. That location, which is most beneficial to the grantee, is to be allowed where the location is doubtful. The general court decided, that if the jury believed the tree at the water side to be the beginning of the land, and that it run till it came again to the water side, then they might find the defendant's location running with the meanders of the river to the beginning. There is no uncertainty in the grant of *Selby's Marsh*. There is no necessity that lines should be expressed when they are implied in the antecedent lines. The expression of the land *lying on the western side of Selby's Bay*, implies that the land has an eastern boundary, and that *Selby's* bay must be its boundary. The defendant's location begins at the edge of *Copling's* creek, and runs round to *Meade's* creek, having that creek and *Selby's* bay as the eastern boundary. The decisions cited do not touch this case. Here the

court instruct the jury; that the defendant's is a true location of the land, if they find the beginning and *Copling's* creek are truly located by the defendant. What was the intention of the grant? It says that the land is to run until it strikes *Watkins* and *Hazeling's* land, and then the expression is "*and with the said land.*" The defendant's location makes the land run with the land of *Watkins* and *Hazeling*, till it comes to the creek, (which must be its bounder though not called for,) and then along the creek, bounding on the creek from which he had begun, to the beginning. In the case of *Helms vs. Howard*, the binding expression, and the course and distance, were contradictory. If the course run west 320 perches, then the binding expression, bounding on the NW. branch, could not be complied with. Here there was an ambiguity, and a proper subject for the jury to decide. But in the grant of *Selby's Marsh* there is no such ambiguity. In the case of *Dorsey vs. Hammond* the question was, whether in the grant of *Dorsey's Search*, where the first line had a binding expression, there was a continuity of it in the other lines? This was to be determined as a matter *in pais*, and the jury were considered the proper judges of it. That question does not apply to this case, where the court permitted evidence to go to the jury, and give their opinion hypothetically upon the facts to be found by the jury. But in the case of *Dorsey vs. Hammond* the court would suffer no evidence at all to go to the jury. There is no analogy between the grants of *Selby's Marsh* and *Dryer's Inheritance*. A general intent may be restrained by particular expressions. The general intent is restricted by the expressions in *Dryer's Inheritance* of "*a straight line to the beginning*;" but in this case the general intent is not restricted by the expression *a straight line to the beginning*.

*Shaaff* and *Johnson*, in reply. 1. The plaintiff claims no title to the land mentioned in the petition upon which the commissioners acted. He and those under whom he claims are strangers to the proceedings and

could not appeal from the decision. The record cannot on that ground be evidence against him. The proceedings of the commissioners are not conformable to the act of 1715, *ch.* 45. No person could appeal from such a judgment but one of the parties—Is all mankind to be concluded? Under the act of 1786, *ch.* 33, for marking and bounding lands, notice was deemed necessary in the case of *Weems vs. Disney.*

In the case of *West vs. Hughes,* (*Ante* 6,) where there had been a mistake in a *fieri facias* issued by a justice of the peace, there being no return day mentioned therein, this court determined the *fieri facias* was illegal. The proof before a justice of the peace in cases before him, is not to be on depositions. His decision is conclusive, if there is no appeal, and yet this court decided that an execution issued by him was illegal. It does not appear from the deposition, that the persons from whom the deponent received his information, was dead. Nor does it appear that the deponent, whose deposition was read in evidence, was also dead. It is a rule that hearsay cannot be admitted as evidence unless the person from whom the information was received was dead at the time of the examination of the witness. Nor can the deposition of a witness be read, if objected to, unless there be proof that he is dead. If such evidence is offered, the party offering it must bring himself within the rule.

2. As to the *second bill of exceptions.* It is admitted as a settled principle, that grants are to be construed most favourably for the grantee. In this case the expressions in the grant of *Selby's Marsh* are, running till it comes to the line of the land of *Watkins* and *Hazeling,* and then running with the said land. If it runs with that land, it will never find the beginning. The plaintiff contended it should run to the beginning by a straight line from the land of *Watkins.* and *Hazeling.* But the court directed the jury, that if they found the beginning and the water, as located by the defendant to be correct, then the line should run with the water to the beginning. A grant is for land with-

in certain courses and distances, or descriptions; and if no land is contained in any such courses and distances or descriptions, then nothing will pass by the grant, and it is a nullity, because of uncertainty. The grant of *Selby's Marsh* calls regularly for a western, a southern, and a northern bounding, but it does not call for an eastern bounding. By running the lines according to the grant there will be no land included within the lines. But the appellee's counsel contend, that by locating the land it will evidently appear by the plots that the water is the eastern boundary of the land by which the survey must be closed. This is begging the question. It must appear by the grant that it was to be so located. The expression in the grant of *Dryer's Inheritance*, in the case of *Dorsey vs. Hammond*, is "*all that tract of land lying on the west side of Patuxent river;*" and the expressions in the grant of *Selby's Marsh* are, "*lying on the west side of Chesapeake bay, and on the west side of South river of that bay,*" and this court decided in the former case that the jury were to ascertain the true location of the land. Here the expressions being similar, the jury are the proper tribunal to decide. If according to the decision of this court as to the grant of *Dryer's Inheritance*, one line of *Selby's Marsh* ran bounding on the river and then to the beginning, it would be for the jury to ascertain its true location. How much more then ought the jury to determine the location on the expressions as used in the grant of *Selby's Marsh?* The attorney general argued in this court, in the case of *Dorsey vs. Hammond*, that running with a straight line to the beginning, made the form of the land, and that all the land between that line and the course of the water, was conveyed by virtue of the expression, "*all that land lying on the west side of Patuxent river.*" The true location of the branch called for in *Selby's Marsh* might have been different at the time the land was taken up. This is a matter of fact to be ascertained by the jury alone. It is a fact which might have varied the location.

MAY 1802

Davis
vs
Batty

THE COURT OF APPEALS, at June term 1804, *re-versed* the judgment of the General Court, dissenting from that court in the opinions expressed in both of the bills of exceptions. The opinion in the *first bill of exceptions* was dissented from, because the deposition of *William Brewer* was permitted to be read in evidence to the jury, it not being stated that he was dead; and the opinion in the *second bill of exceptions* was dissented from for the reasons stated in the case of *Dorsey vs. Hammond*, that it was a matter of fact for the jury, and not for the court to decide.

PROCEDENDO AWARDED.